No. 41,258

CARL R. RUNDQUIST, Treasurer of Saline County, Kansas, *Appellant,* v. J. A. O'LEARY, Bank Commissioner of the State of Kansas; and G. W. LINDLEY, Receiver of the Smolan State Bank, Smolan, Kansas, *Appellees.*

(337 P. 2d 1017)

Opinion filed April 11, 1959.

*Raymond E. Haggart,* of Salina, argued the cause and was on the briefs for the appellant.

*Robert B. Berkley,* of Salina, and *C. V. Beck,* of Emporia, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from an order of the trial court sustaining defendants' motion to quash an alternative writ of mandamus previously allowed. The writ required defendants to pay to plaintiff a thirty per cent dividend amounting to $59,174.03 or show cause for not complying.

Plaintiff, as county treasurer, had on deposit to his credit in the Smolan State Bank $197,246.78 of county funds prior to February

16, 1956, when that bank became insolvent and ceased to do business.

On February 21, 1956, G. W. Lindley was appointed receiver by R. B. Medlin, then bank commissioner of the state of Kansas, now deceased. (J. A. O'Leary, his successor as commissioner, has been substituted as a defendant.)

The deposit had been made pursuant to G. S. 1949, 9-1402, which authorizes such deposits and provides for security in one of several manners including (1) a personal bond in double the amount which may be on deposit at any time; (2) a corporate surety bond of some surety corporation authorized to do business in this state in an amount equal to that on deposit at any given time; or (3) a depository bank may deposit for depositor's benefit securities in the amount of seventy per cent of such total deposits consisting of bonds of the United States, or those fully guaranteed by it, federal land bank bonds, bonds of the state of Kansas, or general obligation bonds of a municipal, or quasi-municipal corportion. Under the provisions of G. S. 1949, 9-1405, the latter plan was adopted and treasury notes, bonds, certificates of indebtedness and municipal bonds having a market value of $145,705.40 on November 30, 1956, were deposited in the National Bank of America, Salina, which also holds accumulated interest of $4,685.30 paid on the securities at the time of filing the motion for and issuance of the alternative writ.

Plaintiff filed his claim for the full amount of $197,246.78. Defendants declared a first liquidating dividend of thirty per cent and paid that dividend on November 30, 1956, to depositors other than plaintiff and plaintiff subsequently obtained an alternative writ of mandamus from the Shawnee county district court directing defendants to pay plaintiff the dividend in the sum of $59,174.03 or show cause for noncompliance.

Defendants filed their motion to quash the alternative writ of mandamus for the reason that neither the writ nor motion therefor stated facts entitling plaintiff thereto.

The trial court sustained this motion to quash with a memorandum opinion which in pertinent part reads:

"What the plaintiff wants is that Saline County will come out of this bank failure without experiencing the loss of one cent and the plaintiff wants this Court to grant a writ of mandamus so that this can be accomplished.

"It seems to me that at the time of the bank failure, February 16, 1956, the deposit was then secured only to the amount that the securities pledged

by the Smolan State Bank were worth at that time, or at the most by the amount the securities could have been sold at the date of the declaration of the first dividend, and to the extent that the deposit (the amount of the claim) exceeded the amount to be realized from the pledge, the plaintiff was unsecured and was thereby relegated to that extent to the status of an unsecured creditor.

"How can it be determined to what extent the claim is unsecured except by disposing of the securities and crediting such sum to the claim to determine the difference? Dividends should then be paid at the declared rate upon the deficiency. If the request made by the plaintiff were allowed and applied in respect to secured creditors in all matters of this kind, it would result in no loss to any secured creditor regardless of the insufficiency of the security. This, I believe, should not be the rule.

"The fact that the plaintiff may have complied with the law (Section 9-1402, G. S. of 1949) as to requiring the bank to secure the deposit to the extent of at least seventy (70) per cent of the total deposits at any given time, does not and necessarily should not result in a fully guaranteed deposit. The law does not say that seventy per cent is all that can be required. It is only a permissible minimum.

"Another claim made by the plaintiff in his petition is that interest income derived from the pledged securities since the date of failure of the bank should be retained by the Receiver and applied to the plaintiff's claim. It is the judgment of this Court that such income does not represent a part of the pledge and therefore properly goes to the Receiver until such time as the pledge is liquidated. I see nothing in the law that provides that the bank shall pledge securities in a certain percentage amount PLUS the income therefrom.

"Therefore, since what the plaintiff is asking the Court to compel the defendants to do by a writ of mandamus, would result in the application of an unaccepted rule of law, the motion to quash should be sustained and an order to that effect is being entered this date."

The trial court, pursuant to the above memorandum opinion, sustained defendants' motion to quash the alternative writ from which order plaintiff brings the instant appeal.

The parties contend the appeal poses two questions but the questions merge into one and that is—for what amount, if any, may plaintiff file a claim to determine his participation in the thirty per cent dividend already declared and in any dividends to be declared in the future?

Mention should perhaps be made that securities are on deposit in the National Bank of America, Salina, a depository, and joint custody receipts therefor are held by the defendant receiver and plaintiff (G. S. 1949, 9-1405) but we will not discuss that subject since the parties have not seen fit to do so. Quite apparent, too, is the fact that plaintiff, under G. S. 1949, 9-1402, had plenty of opportunity to have the deposit fully secured by either of two other

methods but instead he chose the one which secured only seventy per cent of the deposit and he cannot now be heard to complain about the results of his choice.

No issue is raised regarding disposal of the abovementioned securities and since the only show of control over them by plaintiff is his request to have the accrued interest applied as additional security for his deposit, we shall refer to the securities only where necessary in determining the question before us.

No authority is cited, nor has our limited research yielded any, that states a depositor of public funds, such as we have here, should be afforded any advantage over any other secured depositor or claimant. The legislature apparently foresaw the occurrence of the failure of a depository of public funds of the county as is evidenced by G. S. 1949, 19-2635, which provides a buffer for loss of county funds in a defunct depository bank as follows:

". . . the board of county commissioners may either: (a) By resolution, charge off upon the records the amount of such defunct bank balances where said moneys so lost have been restored in part, or in whole, by tax levies or otherwise, and shall be charged against the county general fund, or (b) by resolution, make a levy or levies to raise the necessary funds to restore the funds so lost, or (c) by resolution, issue bonds of said county to restore such lost funds in a sum not to exceed such loss."

The thought that a county has no superior privileges except as provided by statute is to a limited extent covered in *Bachman-Wise Motor Co. v. Comanche County,* 143 Kan. 346, 54 P. 2d 965. There the county in an action involving the distribution of the assets of a partnership initially failed to ask for priority as a preferred creditor and none was granted although it did make a belated request therefor. Such request was denied by the trial court and this court affirmed that judgment.

In one of our early decisions dealing with contingent and secured claims (*National Bank v. Branch,* 57 Kan. 27, 45 Pac. 88) the syllabus, in pertinent part, reads:

". . . the creditors who held the guaranteed mortgage bonds should be compelled first to resort to and exhaust the mortgage securities, and should only be allowed a dividend upon the amount remaining unpaid after exhausting the funds upon which they had a special and exclusive lien."

The opinion in the above case included the following statement:

". . . it is a recognized rule of equity that where there are two funds to which a creditor can resort, and other creditors are limited to one of them, the former will be compelled to exhaust the fund upon which he has an exclusive lien and will be permitted to resort to the other for the deficiency only. . . ."

It would be inequitable to allow these claimants a *pro rata* dividend on the whole amount of their claims when payment of a part, if not all, of it may be received from the mortgage securities to which they have the exclusive right." (p. 35.)

We may add, too, that equity would not permit acceptance of the last-mentioned plan because it would work a distinct hardship on claimants not protected by similar liens on particular securities who had only dividends to look to for any satisfaction of their claims.

The rule in the Branch case was cited with approval and applied in *Investment Co. v. National Bank*, 58 Kan. 414, 418, 49 Pac. 521, and in *Bank v. State*, 8 K. A. 468, 54 Pac. 510, a case similar to our instant case, both the Branch and Investment Company cases were referred to, the rule was repeated, approved and applied. The rule in the Branch and Investment Company cases was referred to and discussed in *Bolman v. Commercial National Bank*, 173 Kan. 155, 161, *et seq.*, 244 P. 2d 1175, but it was not there applied because the facts of the Bolman case were distinguishable from the Branch and Investment Company cases.

This brings us to plaintiff's contention that the accrued interest on the securities should be added to the securities pledged on his deposit but here again no provision was made for such application when the deposit was made and the securities were pledged and in view of all we have heretofore said, we conclude, in the absence of any statutory authority otherwise, that plaintiff cannot now claim such preference on behalf of the county.

The trial court was correct in its reasoning and conclusions in the memorandum opinion as well as in its resulting equitable order. No good purpose will be served by a discussion of other matters raised by the parties.

The judgment is affirmed.