**SIMMONS FOODS, INC., Plaintiff,**

v.

**CAPITAL CITY BANK, INC., Defendant.**

No. 98–4035–RDR.

United States District Court, D. Kansas.

Oct. 17, 2001.

Brock R. Snyder, Law Office of Brock R. Snyder, Topeka, KS, Troy A. Unruh, The Advocates Group, Pittsburg, KS, for plaintiff.

Marta Fisher Linenberger, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action that arises out of a bankruptcy proceeding. Simmons Foods, Inc., a junior creditor of Teets Food Distribution Company, Inc. (Teets), seeks damages from Capital City Bank, Inc. (Bank), a senior creditor of Teets. Simmons Foods asserts claims of breach of the marshaling doctrine, breach of fiduciary duty, negligence, breach of constructive trust, unjust enrichment, and conversion of property. This matter is presently before the court upon the Bank's motion for summary judgment.

### I.

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574,* 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's

claim or position. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The non-movant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; it requires "'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.'" *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), cert. denied, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## II.

■ The court has reviewed the briefs filed by the parties and determined that the following facts are uncontroverted. Plaintiff has set forth a number of facts designated as uncontroverted in its response to the Bank's motion for summary judgment. The court shall not consider many of these facts because they are based upon a document that is hearsay. Hearsay evidence is not competent to oppose a motion for summary judgment. See *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1541 (10th Cir.1995) Accordingly, the court shall not consider these facts.

Capital City Bank entered into a loan agreement with Teets Foods Distributing Co., Inc. This note was secured by real estate in Wichita, Kansas; inventory; some equipment; and accounts receivable. The amount of the note was approximately $300,000.

After the Bank's note and security agreement were executed and filed, Simmons Foods entered into a loan agreement with Teets consisting of a note in the amount of $351,094.27. This loan was secured by a second mortgage on the Wichita real estate.

Approximately one month later, Simmons and Teets executed a second agreement consisting of a note for $191,910.92, payable to Simmons Foods. This note was secured by accounts receivable. Simmons Foods' security interests were second in lien priority to the Bank's security interests.

Approximately two months later, on April 5, 1995, Teets filed for bankruptcy. On May 5, 1995, Simmons Foods' counsel entered an appearance in the bankruptcy.

On August 25, 1995, Teets was granted permission to use cash collateral. The order stated that Teets must maintain inventory and accounts receivable in the amount of $350,000 at the end of each month and must file an aged accounts receivable report each month with the court and Simmons Foods. Reports of Teets' operations were periodically filed in the bankruptcy.

In October 1995, the Bank moved to modify or terminate the use of cash collateral. On November 14, 1995, the court ruled that Teets could continue to use cash collateral for the purpose of paying ordinary and reasonable expenses of the business. The use of this cash collateral was conditioned upon compliance with a number of requirements. The order further provided as follows:

> H. Nothing in this Order shall be dispositive of the claim of Simmons Foods, Inc. to a second mortgage on certain real property and a second security interest in accounts receivable. The validity of the claim of Simmons shall be determined by a separate adversary proceeding.
>
> I. Nothing in this Order shall prohibit the [Capital City] Bank, the Debtor, the Unsecured Creditors Committee or Simmons Foods, Inc. from seeking to amend or terminate this Order granting the use of cash collateral at a later date.

In December 1995, Simmons Foods moved for adequate protection and to lift the bankruptcy stay. On December 20, 1995, the bankruptcy court approved a sales contract on the Wichita real estate of $160,000 unless a higher bid was received by 5:00 p.m. that day. In February 1996, Teets moved to sell personal property consisting of vehicles and equipment to pay the Bank on its security interest. Simmons and the unsecured creditors committee objected. The court approved the sale, but directed the proceeds to go to administrative expenses to operate the business and to fund the Plan.

In March 1996, Simmons Foods moved to convert the case to a Chapter 7 liquidation case. A hearing on this motion was held on April 8, 1996. During the hearing, diminishing accounts receivable was cited as a basis for the motion. On May 1, 1996, Teets agreed to surrender all of its assets to the Bank.

In October 1996, the Bank, having been paid, moved to turn over assets to the unsecured creditor's committee that was in charge of liquidating and distributing assets. Simmons objected and raised the issue of marshaling. The court ordered the Bank to pay a business who had prepared W–2s and other reports for the former employees of Teets. The court ordered that the balance of the funds were to be paid to the unsecured creditors committee.

In December 1996, Simmons Foods filed a motion to release money from escrow. In that motion, Simmons Foods alleged that because the Bank had not exercised the doctrine of marshaling, it caused accounts receivables to be diminished and that surplus funds from the sale of property in Douglas County and in Wichita should be paid to it. Another creditor objected and argued that Simmons did not establish the applicability of the doctrine. This motion was ultimately resolved by agreement. No order for marshaling was entered. The bankruptcy case was closed on August 29, 1997.

### III.

In its motion for summary judgment, the Bank contends that Kansas law does not recognize any of the claims asserted by the plaintiff based upon the circumstances of this case. The Bank argues that neither the facts nor the law support any of the claims made by the plaintiff.

### BREACH OF MARSHALING DOCTRINE

In its complaint, plaintiff alleges that "[t]he Bank failed to marshal any assets and instead first seized all of the accounts receivable." Plaintiff further alleges that "[t]he Bank had actual notice of Simmons Foods, Inc.'s secured interest in the re-

ceivables and still proceeded to collect them in violation of their duty to protect junior creditors under the marshaling doctrine here in Kansas."

The Bank argues that the doctrine of marshaling has no application here. The Bank contends that plaintiff seeks to have the court create a new legal action without common law or statutory authority.

■ Marshaling is an equitable doctrine. As explained by the Supreme Court, this doctrine "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963) (quoting *Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456–57, 45 S.Ct. 528, 69 L.Ed. 1041 (1925)). The purpose of the doctrine is "to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." *Id.* at 237, 84 S.Ct. 318. Because it is an equitable doctrine, marshaling "is applied only when it can be equitably fashioned as to all the parties" having an interest in the property. *Id.*

In Kansas, the rights of secured creditors are governed by the Uniform Commercial Code. The UCC does not specifically refer to marshaling. However, UCC § 1–103 provides for principles of law and equity to supplement the UCC unless invalidated specifically by it. There is little doubt that the equitable concept of marshaling has been recognized in Kansas law. Kansas cases have discussed marshaling in situations where its application might be appropriate. See, e.g., *Rundquist v. O'Leary*, 184 Kan. 496, 337 P.2d 1017 (1959); *In re Concordia Mercantile Co.*, 173 Kan. 155, 244 P.2d 1175 (1952); *Burnham, Hanna, Munger & Co. v. Citizens' Bank of Emporia*, 55 Kan. 545, 40 P. 912

(1895). However, none of these cases recognize marshaling as a cause of action that can be asserted against a creditor or anyone else for that matter. Plaintiff has failed to cite any authority in Kansas or in any other jurisdiction where such a cause of action has been allowed.

■ The law in Kansas does not impose a duty to marshal. Rather, Kansas cases indicate only that a court may impose marshaling as an equitable concept where appropriate. Here, the propriety of marshaling should have been made in the bankruptcy proceeding. With this background, the court shall not create a new cause of action. The court believes that such action would be better left to the Kansas legislature if they believe that this claim should be allowed. In sum, the court finds that the plaintiff has failed to state a claim upon which relief can be granted.

BREACH OF FIDUCIARY DUTY

Plaintiff contends that the Bank owed it a fiduciary duty to it as a junior creditor. Plaintiff argues that this duty is imposed upon the Bank as a senior creditor by Kansas law.

The Bank contends that Kansas law does not provide for a fiduciary relationship between two creditors. The Bank asserts that the application of such an idea to commercial transactions and relationships is nonsense.

■ A fiduciary relationship exists where there has been special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254, 267–68 (1976). In Kansas, there are two types of fiduciary relationships: (1) those created by contract; and (2) those implied in law due to the

factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions. *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235, 1241 (1982). The determination of the existence of a fiduciary relationship in the second category is more difficult to determine. *Id.* The existence of a fiduciary relationship depends on the facts and circumstances of each individual case. *Reebles, Inc. v. Bank of America,* 25 P.3d 871, 874 (Kan.App.2001).

█ Plaintiff has suggested that a fiduciary relationship existed because the Bank had possession of the proceeds from the sale of the Teets' inventory and the Teets' accounts receivables. Plaintiff suggests that the Bank placed themselves in a position of authority by exercising control over the Teets' assets.

The court does not find that these circumstances demonstrate a fiduciary relationship. The parties were involved as creditors in a commercial transaction. The Bank did not act for plaintiff's benefit, and plaintiff did not place any special confidence in the Bank in these transactions. The responsibility was upon plaintiff to protect itself, not upon the Bank to provide this protection. The court finds the evidence totally lacking that the Bank assumed any duties to protect the plaintiff.[1]

## BREACH OF A CONSTRUCTIVE TRUST

Plaintiff asserts that if the Bank was a fiduciary as alleged, then a constructive trust was in place during the liquidation of Teets. Plaintiff suggests that the constructive trust arose when the Bank took

possession of the records and funds of Teets.

█ A constructive trust arises wherever the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title. *Logan v. Logan,* 23 Kan.App.2d 920, 937 P.2d 967, 974 (1997). An essential element of proving a constructive trust is a showing of fraud, either actual or constructive. *Id.*

█ Again, the court finds no merit to the plaintiff's argument. The court has previously determined that a fiduciary relationship between plaintiff and the Bank did not exist here. The court further finds no evidence of fraud by the Bank. Accordingly, the court sees no basis for the imposition of a constructive trust.

## UNJUST ENRICHMENT

█ Plaintiff has alleged that the Bank was unjustly enriched due to its actions in the Teets' liquidation. As suggested previously, the court has not found that the plaintiff has demonstrated that the Bank did anything improper during these transactions. The court again finds no basis to this claim.

## BAILMENT AND CONVERSION

Plaintiff has alleged that the Bank held the funds of Teets as a bailee for it. Plaintiff has further alleged that the improper handling of those funds caused a conversion. The Bank contends that it was not bailee under the circumstances of this case. The Bank further asserts that it did not convert any property because its control over the property was authorized.

---

1. In its complaint, plaintiff alleges as a part of its breach of fiduciary duty claim that the Bank has also breached a duty of good faith. The court finds no evidence that the Bank acted improperly or with intent to harm. Accordingly, the court also finds no basis to support this claim.

A bailment is the delivery of personal property by one person to another for a specific purpose with an express or implied contract that when the purpose has been fulfilled the property will be returned or properly accounted. *M. Bruenger & Co. v. Dodge City Truck Stop, Inc.,* 234 Kan. 682, 675 P.2d 864, 868 (1984). The court agrees with the Bank that neither plaintiff nor Teets delivered any property to it with the agreement that it would be used for a purpose and then returned. The Bank controlled the Teets' property as a result of its security interest. The Bank used the property to satisfy the Teets' indebtedness to it. The Bank did not intend to return it unless the indebtedness was satisfied. These circumstances do not show a bailment.

In addition, the court does not find any conversion by the Bank. The Bank took possession of its collateral and disposed of it pursuant to its rights granted by the UCC and the bankruptcy court. These circumstances do not demonstrate a conversion of property. See *Gillenwater v. Mid–American Bank and Trust Co.,* 19 Kan.App.2d 420, 870 P.2d 700, 704–05 (1994) (bank's disposition of collateral was not conversion because exercise of dominion and control of collateral was authorized under the UCC).

## NEGLIGENCE

Plaintiff has suggested that the Bank had a duty to protect the security interest that plaintiff had in the Teets' accounts receivable. The Bank argues that the law imposed no duty on it to protect a junior creditor. In response, plaintiff has acknowledged that this claim is based in part on the Bank's failure to marshal and in part on the Bank's failure to timely turn over receivables records and to make an adequate accounting.

Again, the court agrees with the Bank. As previously indicated, the Bank did not have a duty to marshal. Moreover, plaintiff has failed to provide any legal support for the other allegations of a duty. The court does not find that the Bank owed any duty to protect the plaintiff.

## SUMMARY

With the aforementioned decisions, the court need not address the other arguments raised by the Bank. The court finds that the Bank is entitled to summary judgment on all claims made by the plaintiff.

In resolving this motion, the court has attempted to be open-minded about the claims made by the plaintiff. Nevertheless, the court is convinced that the allowance of any of these claims would wreak havoc in the land of commercial transactions. The claims demonstrate creativity by plaintiff's counsel, but lack any support in the law or the facts.

Plaintiff has failed to provide any authority from Kansas or any other jurisdiction for the claims alleged in this case. The court has not found any case in Kansas with claims and allegations similar to those raised in this case. The cases the court has discovered in other jurisdictions with somewhat similar allegations have held that a senior lienholder owes no duty to protect a junior lienholder. See, e.g., *Weiss v. Brentwood Savings & Loan,* 4 Cal.App.3d 738, 84 Cal.Rptr. 736, 741 (1970) (no duty owed by senior lienholder to junior lienholder who subordinated loan); *Gill v. Mission Savings & Loan Ass'n,* 236 Cal.App.2d 753, 46 Cal.Rptr. 456, 458 (1965) (senior lienholder owed no duty to protect junior lienholder); *Connecticut Bank & Trust Co. v. Carriage Lane Associates,* 219 Conn. 772, 595 A.2d 334 (1991) (senior lienholder owed no duty to junior lienholder other than duty of good faith); *Frick v. Design Developers, Inc.,* 214 Mich.App. 177, 542 N.W.2d 331,

332–33 (1995) (bank had no duty to protect owners' mortgage interest with regard to bank's construction loan to developer). The underlying rationale for these cases is that no duty of care is necessary in the realm of commercial transactions because the junior lienholder is in a position to protect themselves by providing a margin of safety against the risk that the loan would not be paid. Here, Simmons Foods assumed a security position which it knew carried an element of risk. We believe that the imposition of a special duty on the part of the senior lender toward the junior would create extraordinary problems in the world of commercial transactions.

Finally, the court has considerable concern about plaintiff's delay in raising the issues of this case. Most, if not all, of these problems could have been and should have been raised in the bankruptcy court. This would have allowed the bankruptcy court to address them and provide relief, if appropriate, at the proper time. The court has not decided the instant motion on this basis, but we do recognize the problems that this type of action produces.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 58) be hereby granted. Judgment shall be entered for the defendant on all claims and against the plaintiff on all claims.

**IT IS SO ORDERED.**