**Lewis F. GEER, Plaintiff,**

v.

**William D. COX, et al., Defendants.**

**No. 01–2583–JAR.**

United States District Court,
D. Kansas.

Jan. 3, 2003.

James M. Crabtree, Lenexa, KS, James G. Flynn, Des Moines, IA, for Plaintiff.

Matthew J. Salzman, Erik P. Klinkenborg, Stinson Morrison Hecker LLP, Kansas City, MO, Timothy M. O'Brien, Cheryl L. Reinhardt, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Gregory M. Bentz, Shughart Thomson & Kilroy, PC, Kansas City, MO, Thomas L. Flynn, Matthew T. Cronin, David L. Charles, Belin Lamson McCormick, Zumbach Flynn, Des Moines, IA, William F. Logan, Foland & Wickens, P.C., David R. Buchanan, Scott A. Hunter, Brown & James, P.C., Kansas City, MO, David R. Buchanan, Scott A. Hunter, Brown & James, P.C., Kansas City, MO, for Defendants.

### MEMORANDUM ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND STRIKE

ROBINSON, District Judge.

In a "Class Action and Derivative Complaint" ("Complaint"), plaintiff, as a shareholder of TransFinancial Holdings, Inc. ("TransFinancial"), seeks to assert derivative causes of action concerning the liquidation sale of assets by Crouse Cartage Company ("Crouse"), a subsidiary of TransFinancial, to RLR Investments and R & L Transfer ("R & L"). All of the proceeds from the sale were paid to Crouse's secured creditors, Central States Pension Funds ("Pension Fund") and Bankers Trust Company ("the Bank"). Plaintiff names as defendants TransFinancial; directors Cox, Laborde, O'Neil, Hill and Steward ("Individual Defendants"); the Pension Fund; the Bank; and R & L. All of the defendants have filed motions to dismiss: TransFinancial moves to dismiss Count I for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Doc. 37); the Individual Defendants move to dismiss Counts II and III for failure to comply with Rule 23.1 (Doc. 34) as well as to strike portions of the Complaint (Doc. 36); the Bank and the Pension fund move to dismiss Counts II and III under Rule 12(b)(6) (Docs. 44 and 32); R & L moves to dismiss for failure to state subject matter jurisdiction and verify the complaint (Doc. 40). Plaintiff has filed a consolidated response to all six motions (Doc. 51). For the reasons set forth below, the Court grants the motions of TransFinancial and the Bank and the Pension Fund; denies the motions of the Individual Defendants; and partially grants the motion of R & L, with leave to amend.

### Facts

Crouse is a subsidiary of TransFinancial, a Delaware corporation headquartered in Lenexa, Kansas. Plaintiff, each member of the putative, uncertified plaintiff class and each Individual Defendant is a shareholder of TransFinancial. Individual Defendants were officers and/or directors of TransFinancial and are being sued in that capacity. Individual Defendants were not officers or directors of Crouse.

TransFinancial is a holding company that operated three industry segments: transportation, financial services and industrial technology. TransFinancial conducted its operations in the transportation industry through its wholly-owned subsidiary, Crouse. In 1999, total assets for

TransFinancial's transportation segment constituted 61% of its consolidated total assets and 94% of its consolidated operating revenues.

On or about July 5, 2000, TransFinancial, Crouse, other subsidiaries and the Bank entered into an Amended and Restated Secured Loan Agreement (the "Loan Agreement"). The Bank acknowledged that the Pension Fund held a mortgage lien in real property owned by Crouse.

Crouse ceased operations on or about September 16, 2000. As part of a liquidation outside bankruptcy, on or about October 20, 2002, Crouse entered into an agreement to sell certain assets, including its real estate, equipment, and other personal property, to RLR Investments and R & L for $23.5 million. All of the proceeds from the sale by Crouse were distributed to the Pension Fund and the Bank, both of which were secured creditors of Crouse.

Plaintiff asserts three causes of action concerning Crouse's sale of its assets: Count I, a direct claim against TransFinancial and the Individual Defendants alleging that the sale by Crouse constituted substantially all of TransFinancial's assets without TransFinancial shareholder approval in violation of § 271 of the Delaware Corporation Code; Count II, restating Count I as a derivative claim against all defendants except TransFinancial, on behalf of TransFinancial; and Count III, a derivative claim against all defendants except TransFinancial alleging that the sale by Crouse without TransFinancial shareholder approval constituted conversion. Plaintiff seeks to impose a constructive trust on the proceeds from the sale.

## Analysis

### Rule 12(b)(6) standards

■ The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief,[1] or when an issue of law is dispositive.[2] The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations,[3] and all reasonable inferences from those facts are viewed in favor of the plaintiff.[4] The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims.[5]

■ Plaintiff submits evidence regarding the sale of the Crouse assets in the form of an affidavit from Gary Lutin, an advisor to TransFinancial shareholders. It is well established that "[a] motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings." Fed. R.Civ.P. 12(b)(6). Courts have broad discretion in determining whether or not to accept materials beyond the pleadings.[6] Reversible error may occur, however, if the district court considers matters outside the pleadings but fails to convert the mo-

1. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998).

2. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

3. *Maher*, 144 F.3d at 1304.

4. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).

5. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

6. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (1990).

tion to dismiss into a motion for summary judgment.[7] None of the parties contend that the Court should convert the motion into one for summary judgment, and the Court therefore refuses to consider matters outside of the pleadings submitted by plaintiff at this time.

■ The Court finds it is appropriate, however, to consider the Loan Agreement attached to the Bank's motion to dismiss. It is accepted practice that, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."[8] "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."[9] Plaintiff refers to the Loan Agreement throughout his Complaint.

**TransFinancial motion to dismiss direct action.**

■ TransFinancial argues that Count I should be dismissed under Fed.R.Civ.P. 12(b)(6), arguing that the essence of Count I of the Complaint is that the sale by Crouse of its assets without obtaining TransFinancial shareholder approval violated § 271 and as such, plaintiff's direct claim is not cognizable under Delaware law. Specifically, TransFinancial argues that a shareholder may bring direct actions for injuries done to them in their individual capacities and that plaintiff does not and cannot allege a distinct injury separate and apart from any alleged injury to the shareholders as a whole. TransFinancial contends it was a fatal error for plaintiff to admit that its claims are "typical of the claims of other members of the Class and plaintiff has the same interests as other members of the Class." Plaintiff counters that he was deprived of his individual right to vote for or against the disposition of substantially all of the corporate assets, and that § 271 may be maintained as a direct action.

Section 271 of the Delaware Corporation Code provides in pertinent part:

Every Corporation may at any meeting of its board of directors ... sell, lease, or exchange all or substantially all of its property and assets... upon such terms and conditions and for such consideration... as its board of directors ... deems expedient and for the best interests of the corporation, when and as authorized by resolution adopted by the holders of the outstanding stock of the corporation entitled to vote thereon ...

■ State law determines whether a shareholder may maintain a direct, nonderivative action.[10] Delaware law distinguishes between direct individual and derivative actions based on "the nature of the wrong alleged and the relief, if any, which could result if plaintiff were to prevail."[11]

---

**7.** *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991); *Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir.1998).

**8.** *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *see also Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, ... the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6)

dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." (citation omitted))

**9.** *See GFF,* 130 F.3d at 1385.

**10.** 12B *Flethcher Cyc. Corp.* § 5911.

**11.** *Grimes v. Donald,* 673 A.2d 1207, 1213 (Del.Supr.1996) (quoting *Kramer v. Western Pac.,* 546 A.2d at 352).

Thus, if the relief sought flows primarily to the corporation, the action must be brought as a derivative action on behalf of the corporation.[12] In analyzing whether the complaint states a derivative or direct claim, the court must look to the nature of the alleged wrong rather than the designation used by plaintiff.[13] A plaintiff may maintain a direct action if the shareholder complains of an injury distinct from that suffered by other shareholders, or a wrong involving one of the shareholder's contractual rights as a shareholder.[14]

TransFinancial cites *Atwood Grain & Supply Co. v. Growmark, Inc.*,[15] in support of its argument. In that case, the court interpreted Delaware law when shareholders attempted to bring a direct action against the corporation alleging that the board's unilateral sale of company assets without shareholder approval was not in the best interest of the corporation or its shareholders.[16] The court distinguished between direct and derivative actions as follows:

> Shareholders may bring direct actions ... for injuries done to them in their individual capacities, but must bring a derivative suit where the complaint is primarily for harm to the corporation... An action is derivative 'if the gravamen of the complaint is injury to the corporation, or the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets.'[17]

The court dismissed the plaintiffs' individual claims, holding that they were derivative in nature and could not be brought as direct actions because the plaintiffs had "failed to show that there was any duty owed to them that was not owed to all shareholders of their status, or that they suffered any harm individually."[18]

TransFinancial argues that the same may be said in this case, as plaintiff does not and cannot allege a distinct injury separate and apart from any alleged injury to the shareholders as a whole. TransFinancial further argues that because plaintiff is seeking money damages, any available remedy must accrue to the corporation, so that its shareholders are benefitted fairly and equally as a group. Accordingly, the law requires that a challenge to a consummated sale of corporate assets be brought derivatively as a recovery for the corporation.

The distinction between derivative and direct actions is explained in *Fletcher Cyclopedia of Corporations* as follows:

> However, it is not the plaintiff's characterization of the action which will determine whether or not it is a direct action. Ultimately it is the court which must determine in each instance whether a particular action is a derivative action or a direct action. It is stated that no clear-cut rule has emerged to distinguish the two types of actions. A common approach of the courts is to consider the impact of alleged injury. Was the injury directly to the shareholder or was it to the corporation? Thus, actions

---

12. *See id.*

13. *In re First Interstate Bancorp Consol. Shareholder Litigation,* 729 A.2d 851 (Del.Ch. 1998).

14. *Id.*

15. 712 F.Supp. 1360 (N.D.Ill.1989).

16. *Id.* at 1364.

17. *Id.* (quoting 12B Fletcher, *Cyclopedia of Corporations* § 5911, at 285 (1984 & Supp. 1988)).

18. *Id.*

brought for breach of director or officer fiduciary duty will generally be derivative actions unless the plaintiff can show some special injury which is not common to all shareholders, such as that the injury to plaintiff arose out of plaintiff's relationship to the transaction complained of other than as a shareholder, for example, as a creditor.... Obvious cases of a derivative action are actions claiming excessive compensation to officers or directors, or actions claiming a breach of fiduciary duty by an officer or director.[19]

Count I alleges that the transfer of Crouse assets to R & L violated § 271 and as a result of the sale of substantially all of TransFinancial's assets, "[TransFinancial] and its stockholders have sustained damages." Although plaintiff characterizes the action as a deprivation of the individual shareholders' voting rights, in essence, plaintiff's claim is that the Individual Defendants breached their fiduciary duty and did not act in the best interest of the corporation when they sold the assets without shareholder approval. The gravamen of plaintiff's complaint is injury to the corporation, seeking an accounting of the sale of corporate property and money damages, which must be asserted derivatively.[20] Although plaintiff's claim might have been properly brought as a direct action to enjoin the pending sale of the Crouse assets, it cannot now be maintained as a direct action once the sale of assets has been consummated.[21]

Further, no special relationship or injury is alleged by plaintiff which is not common to all shareholders. The right to vote is a right owed to all shareholders with voting status rather than a separate and distinct harm. Because plaintiff has failed to show that there was any duty owed to him that was not owed to all shareholders of his status, or that he suffered any harm individually, his direct claim must be dismissed as to TransFinancial.

**Individual Defendants' motion to dismiss derivative claims.**

The Individual Defendants contend that plaintiff's derivative claims (Counts II and III) should be dismissed because plaintiff's failure to file a demand with the board of directors of TransFinancial cannot be excused given his failure to allege sufficient facts to support his contention that demand was futile.[22]

The derivative actions were admittedly brought without making prior demand on TransFinancial's board of directors that they pursue such actions on behalf of TransFinancial. Plaintiff's allegations in the Complaint that demand on TransFinancial's board of directors would have been futile and therefore, excused, are as follows:

"[B]ecause the Board has shown through its conduct over the past two years that it cannot independently and impartially consider a demand. The Board has exhibited hostility towards all shareholder efforts at reform, at maximizing shareholder return, as well as a consistent bias toward creditors, and not shareholders." Complaint ¶ 60(a).

"[I]nsofar as the purported sale of, and transfer of, the Crouse Assets to R & L constituted a sale of all or substantially all of the assets of [TransFinancial], the Board failed to submit the sale of the Crouse Assets to the [TransFinancial]

**19.** 19 *Fletcher Cyc. Corp.* § 5.06.

**20.** *Atwood,* 712 F.Supp. at 1364.

**21.** *See* 8 Del. C. § 124.

**22.** The Individual Defendants also contend that plaintiff failed to verify his Complaint. The Court addresses this issue in its discussion of R & L's Motion to Dismiss, *infra.*

shareholders for approval." Complaint ¶ 60(b).

"[T]he Board participated in the wrongful acts at issue." Complaint ¶ 60(c).

"[T]he wrongful acts at issue constitute violations of the fiduciary duties of the Board, and therefore, these acts are not subject to the business judgment rule." Complaint ¶ 60(d).

"To the extent that [TransFinancial] presently maintains or previously maintained officers' and directors' liability insurance coverage, that insurance would be the primary or principal source of any recovery against the Individual Defendants, and would be rendered void if [TransFinancial] commenced proceedings against such Individual Defendants, as these policies uniformly contain provisions that void coverage if the Company brings suit in its own name." Complaint ¶ 61.

■ Fed.R.Civ.P. 23.1 provides that in a derivative action "[t]he complaint shall also allege with **particularity** the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the **reasons** for his failure to obtain the action or for not making the effort." (Emphasis added). Federal law controls in determining whether the allegations of the complaint are particular enough,[23] while state substantive law determines whether the reasons offered by plaintiff for excus-

ing demand are adequate.[24] The law of the state of incorporation applies, and TransFinancial is a Delaware corporation.

■ Under Delaware law, demand on a corporation's board of directors will be excused only if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."[25] The test is disjunctive.[26] In order to satisfy the first prong of the *Aronson* test, plaintiff "must plead particularized facts demonstrating either a financial interest or entrenchment on the part of the directors."[27] In order to satisfy the second prong of the *Aronson* test, plaintiff must plead particularized facts, which "raise a reasonable doubt that the directors exercised proper business judgment in the transaction."[28] Proper business judgment means both substantive due care (terms of the transaction) and procedural due care (an informed decision).[29]

■ Rule 23.1 "is not ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach."[30] The "liberal pleading requirements" do not apply.[31] Rule 23.1 requires that a plaintiff specifically allege the underlying facts supporting each prong of the *Aronson* test with particularity. While not required to plead evidence suffi-

---

23. *See Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96–97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

24. *Id.* at 96, 111 S.Ct. 1711.

25. *Aronson v. Lewis*, 473 A.2d 805, 812–13 (Del.1984), *rev'd on other grounds, Brehm v. Eisner*, 746 A.2d 244, 253–54 (Del.2000).

26. *Grobow v. Perot*, 539 A.2d 180, 188–89 (Del.Supr.1988), *rev'd on other grounds, Brehm*, 746 A.2d at 253–54.

27. *Grobow v. Perot*, 539 A.2d at 188 (Del. 1988).

28. *Id.* at 189.

29. *Id.*

30. *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

31. *Kaufman v. Kansas Gas & Elec. Co.*, 634 F.Supp. 1573, 1578 (D.Kan.1986).

cient to justify a definitive judicial finding, "Rule 23.1 is not satisfied by conclusory statements."[32]

### First Prong–Disinterested and Independent

In order to satisfy this prong, plaintiff must plead particularized facts demonstrating either a financial interest or entrenchment. Plaintiff makes no allegation that any member of TransFinancial's board had a financial interest in the sale of assets by Crouse or that the board's actions were intended to entrench themselves in their positions. To the contrary, plaintiff pleads that all of the proceeds from the sale went to Crouse's secured creditors and that the company was liquidated. There is no allegation that any of the Individual Defendants engaged in self-dealing or received any pecuniary benefit from the sale of the Crouse assets.

Plaintiff does not attempt to satisfy this prong of the *Aronson* test. This concession raises the bar for plaintiff's satisfaction of the second prong of the test.

### Second Prong–Business Judgment.

■ The Delaware Supreme Court recently clarified that the applicable standard in a disinterested director case focuses on the "informational component of the directors' decision-making process."[33] In *Brehm v. Eisner*,[34] shareholders of the Walt Disney Company instituted a derivative action alleging that the directors breached their fiduciary duties by approving and agreeing to a "non-fault" termination of an extravagant and wasteful employment agreement with Michael Ovitz, the president. After determining that plaintiffs could not satisfy the first prong of *Aronson* and that the standard for the

second prong focused on the "informational component of the directors' decision-making process", the court adopted the lower court's finding that the complaint contained no allegations about the decision-making process and dismissed the claims for failure to make a demand:

> There is no allegation that the Board did not consider the pertinent issues surrounding [the president's] termination. Plaintiffs' sole argument appears to be that they do not agree with the course of action taken by the Board... This will not suffice to create a reasonable doubt that the Board's decision to grant [the non-fault termination] was the product of an exercise of business judgment. As demand is not excused ... these claims must be dismissed.[35]

The Individual Defendants argue *Brehm* is analogous to the facts at hand, citing the complete absence of any allegation concerning the alleged decision-making process of the Individual Defendants. They contend that there is nothing in the Complaint to suggest, much less state with particularity, that the Individual Defendants failed to consider the material facts in deciding not to seek TransFinancial shareholder approval before selling the Crouse assets.

■ Plaintiff argues that the Individual Defendants' failure to seek shareholder approval of the sale of the Crouse assets was, in itself, an act of gross negligence, citing the unpublished Delaware decision of *Apple Computer, Inc. v. Exponential*.[36] If so, the board's gross negligence would serve as grounds for plaintiff's failure to make demand. Even ostensibly independent directors cannot invoke the business

---

**32.** *Brehm,* 746 A.2d at 254.

**33.** *Id.* at 259.

**34.** *Id.*

**35.** *Id.* at 266.

**36.** 1999 WL 39547 (Del.Ch.1999)

judgment rule where they "have either abdicated their functions, or absent a conscious decision, failed to act."[37]

█ The Court disagrees that failure to seek shareholder approval is, in itself, an act of gross negligence; as the court in *Apple* stated, violation of § 271 would be gross negligence if the board "completely failed to even attempt to comply with its statutory obligation."[38] Nevertheless, the Court finds that the facts alleged throughout plaintiff's complaint make it clear that it would have been futile for the shareholders to make a demand of the board of directors. In addition to alleging in his Complaint that TransFinancial failed to attempt to comply with its obligations to seek shareholder approval under § 271, plaintiff alleges that the Individual Defendants conducted a "firesale" of the Crouse assets without making an effort to obtain fair market value, and failed to publicly report the terms of the sale for several months. These allegations reflect on the decision-making process of the Individual Defendants and serve as grounds for excusing plaintiff's failure to make demand. Accordingly, derivative Counts II and III will not be dismissed on the ground that plaintiff failed to comply with Rule 23.1.

### Derivative claim against secured creditor defendants

Count II of the Complaint against the Bank and the Pension Fund is based on the alleged breach of § 271. Specifically, plaintiff asserts that the creditors are responsible because the directors failed to obtain TransFinancial shareholder's approval in selling the Crouse assets and using the proceeds to pay the creditors.

The Bank has filed a 12(b)(6) motion, arguing the claim should be dismissed because Crouse was not required to obtain the approval of TransFinancial shareholders before it sold Crouse's assets and because the Bank owed no duty to plaintiff.

█ The Bank argues that TransFinancial has an ownership interest only in the stock of Crouse, and not the assets sold. Because § 271 requires approval of the shareholders of the selling corporation, the Bank contends that TransFinancial shareholders were not entitled to vote on the sale of Crouse's assets. Plaintiff alleges that the subsidiary Crouse constituted substantially all of the assets and/or revenues of TransFinancial.

█ Delaware courts have long held that determination of whether there is a sale of substantially all assets so as to trigger § 271 depends upon the particular qualitative and quantitative characteristic of the transaction at issue. Thus, the transaction must be viewed in terms of its overall effect on the corporation, and there is no necessary qualifying percentage. Such an inquiry is factual in nature.[39] Delaware courts have favored a contextual approach, focusing on whether a transaction involves the sale "of assets quantitatively vital to the operation of the corporation and is out of the ordinary and substantially affects the existence and purpose of the corporation."[40] While the Court has serious questions about the application of § 271 to this case scenario, its discretion to resolve whether the sale of Crouse's assets involved "substantially all of the assets" of TransFinancial in the context of a Rule 12(b)(6) motion is con-

**37.** *Aronson*, 473 A.2d at 813.

**38.** *Apple*, 1999 WL 39547 at *7.

**39.** *Winston v. Mandor*, 710 A.2d 835, 843 (Del.Ch.1997).

**40.** *Gimbel v. Signal Cos., Inc.*, 316 A.2d 599, 606 (Del.Ch.1974), *aff'd*, 316 A.2d 619 (1974).

strained by the highly subjective inquiry imposed by Delaware courts. From the facts alleged thus far, plausible arguments can be made either way, and the Court encourages the parties to address the issue in detail after discovery is complete.

■ Giving plaintiff every reasonable inference, the Court will assume for purposes of the Bank's motion to dismiss only that the shareholders of TransFinancial were entitled to vote on the sale of Crouse assets. Thus, the issue becomes whether the Bank owed any duty to plaintiff under § 271. The Bank argues that a secured creditor may enforce all of its legal remedies against a corporation and owes no duty to the shareholders of its debtors, citing the Delaware case of *Odyssey Partners, L.P. v. Fleming Companies, Inc.*[41] In that case, the secured creditor was also a shareholder that foreclosed its security interest in the debtor's property. The Delaware Court held that, when acting as a secured creditor, the shareholder owed no fiduciary duty to the corporation or the corporation's minority shareholders, and consequently, had no duty to refrain from exercising any of its legal rights.[42]

Plaintiff argues that the Bank had notice that Crouse constituted substantially all of the assets of TransFinancial because it had full access to TransFinancial's financial information as part of the Loan Agreement. Plaintiff contends, without citing any authority, that it is "not fair to infer that the Bank failed to appreciate the financial relationship between TFH and Crouse."

The Court finds that Section 271 imposes no duty or liability on the Bank under these circumstances. Plaintiff's claim that the Bank was "aware of" TransFinancial's relationship with Crouse falls far short of establishing a duty to TransFinancial's

shareholders under § 271. Plaintiff has not alleged that the Bank, which is not a shareholder, officer or director of TransFinancial or Crouse, exercised *de facto* control over either corporation. Nor has plaintiff provided any authority that would support a claim against a secured creditor based solely on receipt of payment of its debt. Accordingly, the Court grants the Bank's motion to dismiss Count II against it on these grounds.

### Count III Derivative claim against secured creditors for conversion

#### *Conversion*

■ Count III alleges that the liens of the Bank and the Pension Fund were satisfied by the proceeds of the transfer of Crouse assets to R & L, which was unauthorized by TransFinancial shareholders and *ultra vires*. Count III requests that defendants account to plaintiff for the proceeds of the transfer and to hold such moneys in a constructive trust.

The Bank moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim of conversion. The Bank argues that as a lienholder, it was entitled to the proceeds of the sale of the Crouse collateral and therefore cannot be held liable on a conversion theory and further, that Crouse, the owner of the assets sold, consented to the Bank's receipt of the proceeds of the sale by voluntarily paying the proceeds to the Bank.

■ Because the alleged conversion took place in Kansas, the law of Kansas governs the viability of plaintiff's conversion claim.[43] A plaintiff asserting a conversion cause of action must prove that the defendant intentionally exercised wrongful dominion or control over property of the plaintiff that so severely interferes with

---

**41.** 735 A.2d 386, 414 (Del. Ch.1999).

**42.** *Id.*

**43.** *See Farmers State Bank v. Production Credit Assoc. of St. Cloud,* 243 Kan. 87, 96, 755 P.2d 518 (1988)

the plaintiff's right to control the property that the court may justly require the defendant to pay full value of the property.[44] Because a lienholder has a right to possess the property subject to its lien, the lienholder does not commit conversion by taking possession of, and selling, the encumbered property.[45] A claim for conversion is barred where the owner of property consents to the defendant's possession.[46]

In this case, plaintiff has alleged that Bank was the holder of a consensual lien in certain personal property of Crouse. Plaintiff alleges that Crouse sold its encumbered assets without authority from the TransFinancial shareholders and used the proceeds to pay the Bank. Plaintiff does not dispute that the Bank had a lien in the proceeds of the collateral that Crouse sold. Rather, plaintiff states that the claim for conversion centers on the question "who has the rights to possession?"

■■■ The Court finds that the Bank did not improperly exercise dominion and control over the sale proceeds. Kansas law is clear that a secured creditor is not liable for conversion based solely on the exercise of its security rights.[47] Plaintiff does not allege or assert that the Bank did not have a valid lien in the proceeds from the Crouse sale. Regardless of whether Crouse or the Individual Defendants breached any duty to plaintiff for failure to obtain shareholder approval, it is clear that the Bank was entitled to possession of the proceeds of the sale of its collateral. Considering the facts in the light most positive to plaintiff, the Court finds that plaintiff has failed to state a claim for conversion.[48]

### Constructive trust

■■■ The Pension Fund moves for dismissal of Count III under Rule 12(b)(6) on the grounds that plaintiff's complaint fails to allege sufficient facts to impose a constructive trust on the proceeds from the sale of the Crouse assets. The Bank joins the Pension Fund in this motion.

■■■ Under Kansas law, a constructive trust is a legal fiction that adopts the analogy of a trust and declares that a beneficiary owns an equitable interest in property.[49] A constructive trust may be imposed when the circumstances under which property was acquired make it inequitable that it should be retained by the person who holds legal title.[50] An essential element of proving a constructive trust is a showing of fraud.[51] In order to sup-

**44.** *Rodgers v. Crum,* 168 Kan. 668, 672, 215 P.2d 190 (1950).

**45.** *See Gillenwater v. Mid–American Bank and Trust Co.,* 19 Kan.App.2d 420, 426, 870 P.2d 700 (1994).

**46.** *See Rodgers v. Crum,* 168 Kan. at 672, 215 P.2d 190.

**47.** *Gillenwater,* 19 Kan.App.2d at 426, 870 P.2d 700; *see also Simmons Foods, Inc. v. Capital City Bank, Inc.,* 270 B.R. 295, 302 (D.Kan.2001).

**48.** The Court questions whether the allegation that Crouse's transfer to the Bank was *ultra vires* allows plaintiff to undo the transfer as to the Bank. Delaware strictly limits the relief available in the event of an *ultra vires* transaction, and this relief does not appear to include upsetting a consummated contract at the suit of the corporation or its shareholders. 8 Del. C. § 124 limits *ultra vires* claims to 1) proceedings by a stockholder against the corporation to enjoin the doing of any transfer of real or personal property by the corporation and 2) proceedings by or through a corporation in a derivative suit against an incumbent or former officer or director of the corporation.

**49.** *See In re Leitner,* 236 B.R. 420, 424 (Bkrtcy.D.Kan.1999).

**50.** *See, e.g., In re Fisher,* 1996 WL 695401 (D.Kan.1996).

**51.** *Kampschroeder v. Kampschroeder,* 20 Kan. App.2d 361, 364, 887 P.2d 1152 (1995).

port such a trust "[t]here must be fraud, actual or constructive, some betrayal of confidence reposed or some breach of duty imposed ...."[52] Although the fraud may be actual or constructive, plaintiff must plead and prove one or the other before a constructive trust may attach.[53]

■ The Pension Fund and the Bank argue that plaintiff's Complaint does not attempt to plead actual or constructive fraud with particularity and accordingly, the complaint must be dismissed. Any claim of fraud must be pleaded with particularity.[54] This means that to survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[55] While plaintiff's Complaint alleges that the Crouse assets were sold without approval of the TransFinancial shareholders, it fails to state with particularity how this amounted to fraud. The Court agrees that plaintiff's constructive trust claim is inadequate.

■ The deficiencies in plaintiff's Complaint run deeper than mere failure to plead fraud with particularity. The secured creditors contend that, even assuming plaintiff had successfully alleged the elements necessary to impose a constructive trust under Kansas law, there could be no recovery against the Pension Fund or the Bank under the "trust pursuit rule." The rule permits a true owner of wrongfully converted property to follow it into a subsequent possessor's hands. It applies only where a constructive trust has first affixed to the property in question. The rightful owner may follow the proceeds from the sale of the trust property so long as no superior equities have intervened.[56] However, Kansas law permits a third party to keep proceeds paid to it from the unauthorized sale or encumbrance of trust property by the trustee, absent a showing that the third party acted in bad faith, had notice of the trust, or did not give consideration for the payment.[57]

Consistent with its previous ruling on conversion, the Court finds that plaintiff has failed to allege that the Pension Fund and the Bank were anything other than innocent third parties that received proceeds from the Crouse sale in good faith. Plaintiff has effectively acknowledged that both the Pension Fund and the Bank held valid mortgage liens that were satisfied when the Crouse assets were sold. Plaintiff has not alleged that the secured creditors received the sale proceeds in bad faith. Under these circumstances, Kansas law prohibits any recovery from the Pension Fund or the Bank, even if plaintiff could allege sufficient facts to impose a constructive trust in the first instance. Accordingly, the Court dismisses Count III as to the Pension Fund and the Bank.

**R & L Defendants' Motion to Dismiss**

R & L seeks to dismiss all claims against them on the basis of lack of subject matter jurisdiction and failure to verify the complaint.

---

**52.** *In re Albert,* 194 B.R. 907, 911 (D.Kan. 1996) (citation omitted).

**53.** *Kampschroeder,* 887 P.2d at 1155.

**54.** Fed.R.Civ.P. 9(b).

**55.** *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997) (citation omitted).

**56.** *See Sprague v. Farm Credit Services of Central Kansas PCA,* 28 Kan.App.2d 872, 874, 22 P.3d 608 (Kan.App.2001).

**57.** *See id.* at 876, 22 P.3d 608.

*Subject matter jurisdiction*

 Plaintiff seeks subject matter jurisdiction on the basis of 28 U.S.C. § 1332; there is no allegation of federal question jurisdiction. The party seeking the exercise of jurisdiction in his favor "must allege in his pleading the facts essential to show jurisdiction."[58] The Complaint alleges that plaintiff is a resident of New Mexico, but does not contain specific allegations of citizenship of each defendant, specifically the Individual Defendants.

 Plaintiff responds that the Individual Defendants have not objected to jurisdiction in their responsive pleading or otherwise asserted that they are citizens of New Mexico, pointing out that R & L concedes that diversity may exist. Mindful of the law that jurisdiction cannot be conferred on this court by consent, inaction or by stipulation, the Court declines to infer jurisdiction.[59] However, Federal law provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."[60] The intention of Congress in enacting this statute was to broadly permit amendment of jurisdictional allegations defective in form, not substance, so as to avoid dismissal on technical grounds.[61] Accordingly, the Court will permit plaintiffs to amend their Complaint to correct the defect and include a proper allegation of jurisdiction as to the remaining defendants.

*Verification of Complaint*

Fed.R.Civ.P. 23.1 requires that a complaint in a shareholder derivative action "shall be verified." Plaintiff attached his verification to his Memorandum in Opposition to All Defendants' Motions to Dismiss. The Court exercises its discretion and finds this verification substantially meets the requirements of Rule 23.1 and denies R & L's motion to dismiss on this ground.

**Individual Defendants' Motion to Strike**

 The Individual Defendants move pursuant to Fed.R.Civ.P. 12(f) to strike allegations in plaintiff's Complaint that are "redundant, immaterial, impertinent, or scandalous." The Individual Defendants contend that plaintiff makes several allegations that are completely collateral to the three causes of action based on the sale of the Crouse assets: 1) allegations about O'Neil's termination; 2) allegations about the proposed UPAC sale; and 3) a proposed management buyout by certain Individual Defendants.

 "The purpose of [Rule 12(f) ] is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial."[62] Although motions to strike are generally disfavored, "the decision to grant a motion to strike is within the discretion of the court."[63] When allegations in a complaint "are entirely collateral and immaterial to the underlying claims," they should be stricken.[64]

---

58. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

59. *See Hung Duc Bui v. IBP, Inc.*, 201 F.R.D. 509, 513 (D.Kan.2001) (citations omitted).

60. 28 U.S.C. § 1653 (1994).

61. *Hung Duc Bui*, 201 F.R.D. at 513 (citing *Brennan v. University of Kan.*, 451 F.2d 1287, 1289 (10th Cir.1971)).

62. *Resolution Trust Corp. v. Schonacher*, 844 F.Supp. 689, 691 (D.Kan.1994).

63. *Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505, 1515 (D.Kan.1992).

64. *Murray v. Sevier*, 156 F.R.D. 235, 258 (D.Kan.1994).

Plaintiff argues that the allegations are important to provide the background and context for the Complaint, especially the allegations of demand futility. Where there is any doubt as to whether under any circumstance an allegation may raise an issue, the motion to strike should be denied.[65] Accordingly, the Individual Defendant's motion to strike is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT:**

1) TransFinancial's Motion to Dismiss Count I (Doc. 37) is GRANTED;

2) Individual Defendants' Motion to Dismiss Counts II and III for failure to comply with Rule 23.1 (Doc. 34) is DENIED;

3) the Motions of the Bank and the Pension Fund to Dismiss Counts II and III (Docs. 44 and 32) are GRANTED; and

4) Individual Defendants' Motion to Strike (Doc. 36) is DENIED.

**IT IS FURTHER ORDERED** that R & L's Motion to Dismiss is GRANTED in part and DENIED in part; plaintiff shall have leave to amend his Complaint to correct the jurisdictional allegations as to the remaining defendants on or before January 21, 2003.

**IT IS SO ORDERED.**

---

**65.** *Nwakpuda v. Falley's, Inc.,* 14 F.Supp.2d 1213, 1215 (D.Kan.1998).