**R. Edward WALKER, Plaintiff,**

v.

**UNITED STATES of America,
Defendant,**

v.

**FIRST NATIONAL BANK AND TRUST
COMPANY OF MIAMI, OKLAHOMA,
Additional Defendant.**

Civ. No. 84–C–875–C.

United States District Court,
N.D. Oklahoma.

Jan. 14, 1986.

Michael Gibson, Dept. of Justice, Tax Div., Dallas, Tex., for U.S.

Jack H. Santee, Tulsa, Okl., for First Nat. Bank and Trust Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

H. DALE COOK, Chief Judge.

This matter came on before the Court for non-jury trial on November 1, 1985, on the cause of action alleged by the Defendant, United States of America ("IRS"), in Count II of its Counterclaim against Additional Defendant, First National Bank and Trust Company of Miami, Oklahoma ("Bank"). The issues raised by Count II of the IRS Counterclaim had previously been severed by the order of this Court from the issues between the Plaintiff, R. Edward Walker ("Walker") and the IRS.

The action by the IRS against the Bank alleges tortious conversion by the Bank of the proceeds of accounts receivable ("Receivables") in the amount of $267,841.23 generated by the Pettett Corporation ("Pettett") in its manufacturing business during a period beginning August 21, 1981, and ending September 8, 1981. The IRS claims a prior and superior interest in the Receivables by reason of federal tax liens filed on July 6, 1981, against Pettett for non-payment of withholding and FICA taxes due on wages paid to employees of Pettett during the Fourth quarter of 1980 and the first quarter of 1981. The total amount of taxes, penalty and interest claimed by the IRS under such liens was $289,905.12 as of September 30, 1985. The IRS conceded at the outset of trial claims against the Bank allegedly arising from a federal tax lien filed November 23, 1981. The Bank claims a prior and superior security interest in the Receivables which it collected as proceeds under a perfected security interest in all Pettett accounts receivable, inventory and the proceeds thereof owned by Pettett on August 20, 1981.

The parties have submitted proposed findings of fact and conclusions of law, and the matter is now ready for disposition. After considering the pleadings, testimony, exhibits admitted at trial, all of the briefs and arguments presented by counsel for both parties, and being fully advised in the premises, the Court enters the following findings of fact and conclusions of law pursuant to F.R.Cv.P. 52(a).

### Findings Of Fact

1. Defendant-Counterclaimant is the United States of America. Additional Defendant is a national banking association officing solely in Miami, Oklahoma.

2. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1340 and 1346, and by 26 U.S.C. § 7402.

3. On the dates and for the periods listed below, the IRS made assessments against the Pettett Corporation for unpaid federal withholding taxes, penalties and interest, the unpaid balances of which as of September 30, 1985, are as follows:

| Taxable Period Ending | Date of Assessment | Unpaid Balance |
| --- | --- | --- |
| 12/31/80 | 5/18/81 | $51,370.44 |
| 3/31/81 | 5/18/81 | 238,534.68 |

4. On July 6, 1981, the IRS filed in Oklahoma County, Oklahoma, Notices of Federal Tax Lien against Pettett pursuant to the Internal Revenue Code giving notice of liens for the assessments listed in Paragraph 3.

5. With respect to the Notices of Tax Lien for the fourth quarter of 1980 and the first quarter of 1981 described in Paragraph 4 above, August 21, 1981, was the 46th day after the filing date contemplated by Section 6323(c) of the Internal Revenue Code.

6. During the period beginning August 21, 1981, and ending September 8, 1981, Pettett Corporation shipped and billed for goods sold in the ordinary course of business thereby bringing into existence account receivables ("Receivables") totaling $267,841.23.

7. On August 20, 1981, Pettett owned and had on hand at its plant in Miami, Oklahoma, inventory consisting of $130,000.00 in finished goods and $650,000.00 in raw materials. The raw materials on hand were sufficient to provide all materials required to operate the Pettett plant for a period of from three to eight weeks. A minimum of three weeks supply of all materials required in the manufacturing process was on hand and an eight week supply existed as to some raw materials.

8. During the period from August 21, 1981, to and including September 8, 1981, Pettett shipped $120,587.94 worth of the finished goods on hand on August 20, 1981, and during the same period used $99,550.55 in raw materials on hand on August 20, 1981, to manufacture and ship the balance of the goods sold which generated the Receivables in the amount of $267,841.23.

9. On February 8, 1979, Pettett entered into a loan agreement with the Bank under which it borrowed $750,000.00. Such loan remained outstanding at all times relevant to this action and was later increased. On August 20, 1981, the outstanding principal balance of the loan was $989,400.00.

10. The loan from the Bank to Pettett described in Paragraph 9 above was secured by a properly executed and delivered financing statement and security agreement, describing as collateral all of Pettett's then owned and thereafter acquired inventory, accounts receivable and the proceeds therefrom.

11. The financing statement described in Paragraph 10 above was filed with the County Clerk of Oklahoma County on February 14, and February 23, 1979.

12. The Receivables in the amount of $267,841.23 generated by Pettett during the period from August 21, 1981, to September 8, 1981, were assigned to the Bank during such period and were later collected in due course and applied against Pettett's loan at the Bank under a procedure which directed all payments on Receivables to a special post office box controlled by the Bank. All payments were picked up from

the post office by the Bank and deposited to a special account at the Bank in the name of Pettett from which debits were made to pay Pettett's loan. At all times, the payments were segregated from other Pettett funds and identifiable as the proceeds of the Receivables.

*Conclusions Of Law*

1. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1340 and § 1346, and pursuant to 26 U.S.C. § 7402.

2. The outstanding loan of the Bank to Pettett in the amount of $989,400.00 on August 20, 1981, was secured by a continuously perfected security interest under the Oklahoma Uniform Commercial Code in all inventory and accounts receivable owned by Pettett on that date and the proceeds therefrom.

3. The perfected security interest of the Bank was a commercial transaction financing agreement covering qualified property in the form of inventory in the amount of $780,000.00 owned by Pettett on August 20, 1981, within the meaning of Section 6323(c) of the Internal Revenue Code of 1954.

4. Of the Receivables in the amount of $267,841.23 generated by Pettett from August 21, 1981, to September 8, 1981, $220,138.49 were the identifiable proceeds from the disposition of inventory owned by Pettett on August 20, 1981, within the meaning of Section 6323(c) of the Internal Revenue Code of 1954.

5. The notice of federal tax liens of the United States against Pettett for the periods ending 12–31–80 and 3–31–81, filed with the County Clerk in Oklahoma County on July 6, 1981, perfected such liens against all personal property of Pettett, pursuant to Section 6323(f)(1)(A)(ii) of the Internal Revenue Code of 1954 (26 U.S.C.) and 68 Okla.Stat.Sec. 24301(b)(1).

6. The federal tax liens of the United States for unpaid withholding taxes in the amount of $289,905.12 as of September 30, 1985, were a first and prior lien against the Receivables in the amount of $267,841.23

generated by Pettett from August 21 to September 8, 1981, except as to $220,138.49 of such Receivables which were the identifiable proceeds from the disposition of inventory owned by Pettett on August 20, 1981, as to which the Bank had a first and prior lien.

7. In collecting and applying to the Pettett loan $47,702.74 in receivables on which the United States had a first and prior lien, the Bank thereby tortiously converted such sum.

8. In addition to damages in the amount of $47,702.74, the United States is entitled to interest on such sum from March 15, 1982.

9. The right to the funds at issue in this case derives from a taxpayer's failure to remit federal withholding and FICA taxes under § 6323 of the Internal Revenue Code. The IRS had no right to impose the tax lien absent Walker's failure to comply with a federal obligation.

10. The priority of this tax lien is determined by federal law. State common law merely provided the mechanism (action for conversion) through which the IRS was able to recover the wrongfully withheld funds. Congress has expressly provided the applicable interest rate to be applied to funds wrongfully withheld from the IRS in 26 U.S.C. § 6621, the application of which would have been necessarily applied but for Bank's wrongful conversion of the funds at issue. To apply state law would be to divest the IRS of some portion of the funds it would otherwise have been entitled to, absent the intervening illegal action of Bank in the form of conversion, and would be to directly and adversely affect the U.S. Treasury. The IRS's prevailing in this case is, in essence, a recovery of overdue taxes. Thus, the interest rate to be applied in this case should be and hereby is governed by § 6621.

Accordingly, the Court finds the United States should be and hereby is granted judgment against Bank in the amount of $47,702.74 plus interest from March 15, 1982, on such amount at the rate established under Section 6621.