**In re NUMED HOME HEALTH CARE INC., Debtor.**

**No. 8:00–bk–16984–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 3, 2005.

David S. Jennis, Jennis & Bowen, PL, Richard J. McIntyre, Trenam, Kemker, Scharf, Tampa, FL, for Debtor.

## ORDER ON MOTION FOR ENTRY OF AN ORDER DETERMINING (i) IRS' INTEREST IN FUNDS ALLOCATED TO DEBTOR SILVER MOVES, (ii) AMOUNT OF TORTIOUS CONVERSION JUDGMENT ENTERED IN IRS ADVERSARY PROCEEDING, AND (iii) DIRECTING FINAL DISTRIBUTION OF ALLOCATED PLAN FUNDS

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Entry of an Order Determining (i) IRS' Interest in Funds Allocated to Debtor Silver Moves, (ii) Amount of Tortious Conversion Judgment Entered in IRS Adversary Proceeding, and (iii) Directing Final Distribution of Allocated Plan Funds (the Motion).

The Motion was filed by Heller Healthcare Finance, Inc. (Heller). In the Motion, Heller "seeks the entry of an Order fixing the IRS' interest in funds allocated to Silver Moves and determining the amount of the Tortious Conversion Judg-

ment entered in the IRS Adversary Proceeding."

The United States of America (USA) filed an Opposition to Heller's Motion. In its Opposition, the United States "concurs in defendant's request that this Court clarify its Final Judgment dated March 3, 2003, and fix the amount of the judgment in favor of the United States and against the defendant with respect to issues regarding the debtor, Silver Moves, Inc., d/b/a Florida Nursing Services."

Heller and the USA disagree, however, on the specific amount that should be awarded to the USA on account of the tortious conversion judgment.

### Background

NuMed Home Health Care, Inc. was a holding company that operated through eight wholly-owned subsidiary corporations. One of the subsidiaries was an entity known as Silver Moves, Inc.

On November 1, 2000, NuMed and its subsidiaries, including Silver Moves, filed separate petitions under Chapter 11 of the Bankruptcy Code.

After the filing of the petitions, Heller and the USA stipulated that Heller held "perfected security interests under the Uniform Commercial Code in the collateral defined in the loan documents executed by NuMed Home Health Care, et al." (Adv. Pro. 01–59, Doc. 90, Findings of Fact, Conclusions of Law, and Memorandum Opinion, pp. 3–4). The principal amount owed to Heller under the loan documents was $870,963.93 as of the petition date. Heller's collateral included the accounts receivable of Silver Moves.

The USA was also a creditor of Silver Moves by virtue of two Notices of Federal Tax Liens filed before the commencement of the chapter 11 cases. Specifically, one Notice was filed on February 4, 2000, and

the other Notice was filed on October 10, 2000. (Adv.Pro.01–59, p. 4). As of November 1, 2000, the amount of the February 4, 2000 Tax Lien was $58,220.02, and the amount of the October 10, 2000 Tax Lien was $23,055.97.

While the chapter 11 cases were pending, the USA filed an adversary proceeding (Adv.Pro.01–59) and requested a determination that its federal tax liens were entitled to priority over the security interests of Heller in the accounts receivable of the Debtors, including Silver Moves. The USA also contended that Heller wrongfully converted the proceeds of the accounts receivable after it had knowledge of the tax liens.

On March 6, 2003, the Court entered its Findings of Fact, Conclusions of Law, and Memorandum Opinion in Adversary Proceeding 01–59. In its Opinion, the Court made the following findings as to the relative priorities of Heller's security interest and the USA's tax liens in the accounts receivable of Silver Moves:

> The Court concludes, therefore, that the USA held a first priority tax lien on Silver Moves' accounts receivable pursuant to the Notice of Tax Lien filed on February 4, 2000. As to the Notice of Tax Lien filed on October 10, 2000, the Court concludes that Heller holds a first priority security interest in the accounts receivable generated by Silver Moves between October 10 and October 25, 2000, and that the USA holds a first priority tax lien on the accounts receivable generated by Silver Moves for the period between October 26 and November 1, 2000.

(Adv.Pro.01–59, Doc. 90, p. 21). The Court's conclusion as to the October 10, 2000 Tax Lien was based on the Court's finding that Heller received knowledge of the October 10 Tax Lien on October 25, 2000. (Adv.Pro.01–59, Doc. 90, p. 20).

With respect to the USA's claim for tortious conversion, the Court found that "Heller knowingly exercised control over property that was subject to the USA's tax liens by performing periodic 'sweeps' of the lockbox account into which each of the four debtors' receivables were deposited." (Adv.Pro.01–59, Doc. 90, p. 27). As to Silver Moves, the Court made the following findings as to the calculation of damages arising from the conversion:

> 3. *Countryside and Silver Moves.* As to Countryside and Silver Moves, the Court has found that the USA held a first priority tax lien on the receivables generated by these two entities from October 25, 2000, the date on which Heller received knowledge of the liens, to November 1, 2000. During this period, the evidence shows that Heller swept the total sum of $44,890.22 from the lockbox account. . . .
>
> The damages to the USA are not the total amounts swept from the accounts, however, but are the amounts of the receivables generated by Countryside and Silver Moves after October 25, 2000, that were in the accounts when the accounts were swept and that were subject to liens that have not been satisfied by payment from the particular Debtor or from the escrow funds allocated to that Debtor.

(Adv.Pro.01–59, Doc. 90, pp. 27–28).

A Final Judgment was entered in the adversary proceeding contemporaneously with the Findings of Fact and Conclusions of Law. (Adv.Pro.01–59, Doc. 91).

Finally, during the course of the Chapter 11 case, the parties stipulated that the value of Silver Moves' assets was $50,842.00. (Adv.Pro.01–59, Doc. 90, p. 5). On November 16, 2001, and July 29, 2002, the Court entered Orders authorizing distribution to the USA of the full amount

allocated to Silver Moves, and the USA has received the sum of $50,842.00 attributable to Silver Moves. (Adv. Pro. 01–59, Doc. 90, p. 6; USA's Opposition, pp. 3–4).

## Discussion

The purpose of the Motion under consideration is to fix the precise amount of the USA's damages for Heller's tortious conversion of Silver Moves' accounts receivable.

Heller contends that the amount to be distributed to the USA is $8,600.52. Heller calculates this figure as follows:

| | | |
|---|---|---|
| Amount from February 4, 2000 Tax Lien | - | $58,220.02 |
| Amount from October 10, 2000 Tax Lien | - | $ 1,222.50 |
| Subtotal | - | $59,442.52 |
| Less amount received | - | ($50,842.00) |
| Distribution | - | $ 8,600.52 |

(Heller's Reply, p. 2).

The USA, on the other hand, contends that it is entitled to a distribution in the amount of $30,433.99. The USA calculates this figure as follows:

| | | |
|---|---|---|
| Amount from February 4, 2000 Tax Lien | - | $58,220.02 |
| Amount from October 10, 2000 Tax Lien | - | $23,055.97 |
| Subtotal | - | $81,275.99 |
| Less amount received | - | ($50,842.00) |
| Distribution | - | $30,433.99 |

(USA's Opposition, p. 1).

The parties were unable to agree as to which of the two figures is the correct amount to be distributed to the USA, and therefore filed the Motion requesting the Court to make the determination. According to Heller, the Motion "puts the issue as between one of two numbers, the IRS' number and Heller's number." (Transcript, p. 5).

The formula applied by Heller is generally the same as that applied by the USA. Essentially, both calculations start with an amount based on the USA's tax liens, and subtract the amount received by the USA pursuant to prior Orders of this Court, to reach the amount of the proposed distribution on account of the tortious conversion judgment.

With respect to the first component of the calculation, Heller and the USA apparently agree that the amount due under the February 4, 2000 Tax Lien is $58,220.02. (Heller's Motion, p. 7; USA's Opposition, p. 5, note 3). The parties also apparently agree that the full amount of the February 4, 2000 Tax Lien should be included in the conversion judgment.

The parties disagree, however, on the amount that should be included in the conversion judgment on account of the October 10, 2000 Tax Lien. This appears to be the sole issue in the parties' dispute.

According to Heller, the amount subject to the conversion judgment based on the October 10, 2000 Tax Lien is $1,222.50. Heller contends that this is the appropriate amount because the USA's recovery is limited to those receivables in which it held a first priority lien status. With respect to the October 10 Tax Lien, the Court has determined that the USA holds a first priority status only as to the receivables generated by Silver Moves between October 26 and November 1, 2000. The parties have stipulated that the amount of such receivables generated during that period is $1,222.50. (USA's Opposition, p. 6; Heller's Reply, p. 2; Transcript, p. 8).

The USA's lien, however, is not entitled to first priority status on the receivables generated between October 10 and October 25, 2000. Instead, Heller held a first priority security interest in the accounts receivable generated by Silver Moves between those dates. (Adv.Pro.01–59, Doc. 90, p. 21). Consequently, Heller contends that the receivables generated during that period could not be subject to the conversion judgment because "Heller could not tortiously convert its own collateral." (Heller's Motion, p. 6, n. 5).

In other words, with respect to the October 10, 2000 Tax Lien, Heller contends

that the USA's conversion judgment should be limited to the amount of the receivables on which the USA held a first priority lien. ($1,222.50), since only those receivables could be wrongfully converted.

The USA asserts, on the other hand, that it is entitled to a conversion judgment based on the entire amount due under the October 10, 2000 Tax Lien. "The United States submits that the final judgment with respect to the Silver Moves issues should be ... (2) with respect to the tortious conversion issue, $81,275.99—$50,842.00 = $30,433.99, plus post-judgment interest." (USA's Opposition, p. 1). The $81,275.99 figure used in this calculation includes the sum of $58,220.02 arising from the February 4 Tax Lien, plus the full amount of $23,055.97 due under the October 10 Tax Lien.

The USA bases its argument primarily on the language in the Court's Memorandum Opinion and Final Judgment dated March 6, 2003, to the effect that its damages are "the unsatisfied amounts of the liens of the USA relating to Silver Moves after applying credit for the $50,842 that the USA has received." (USA's Opposition, p. 9).

■ The Court declines to accept the USA's position with respect to the amount of the conversion judgment. The full text of the Court's Memorandum Opinion relating to the conversion of Silver Moves' receivables is as follows:

3. *Countryside and Silver Moves.* As to Countryside and Silver Moves, the Court has found that *the USA held a first priority tax lien on the receivables generated by these two entities from October 25, 2000, the date on which Heller received knowledge of the liens, to November 1, 2000.* During *this period,* the evidence shows that Heller swept the total sum of $44,890.22, from the lockbox account. Specifically, (1) on October 25,

2000, the sum of $2,820.00 was transferred from the lockbox account to Heller, (2) on October 26, 2000, the sum of $3,077.65 was transferred from the lockbox account to Heller, (3) on October 27, 2000, the sum of $10,776.73 was transferred from the lockbox account to Heller, (4) on October 30, 2000, the sum of $3,701.10 was transferred from the lockbox account to Heller, and (5) on October 31, 2000, the sum of $24,514.74 was transferred from the lockbox account to Heller. (Plaintiff's Exhibits 42 and 146, Bank Statement for the NuMed Home Health Care bank account for October, 2000).

*The damages to the USA are not the total amounts swept from the accounts, however, but are the amounts of the receivables generated by Countryside and Silver. Moves after October 25, 2000,* that were in the accounts when the accounts were swept and that were subject to liens that have not been satisfied by payment from the particular Debtor or from the escrow funds allocated to that Debtor.

(Adv.Pro.01–59, Doc. 90, pp. 27–28)(Emphasis supplied).

It is clear from the context of this passage that the USA's conversion damages as to its October 10 Tax Lien were limited to the period between October 25 and November 1, 2000, since that is the period during which its Tax Lien had first priority status.

■ This conclusion is consistent with the general principle that a junior lienholder should not be entitled to assert a claim for conversion against the holder of the senior lien on the same property. *Simmons Foods, Inc. v. Capital City Bank, Inc.,* 270 B.R. 295, 302 (D.Kan.2001)(No conversion as alleged by junior lienor, where senior lienor only exercised its

rights in the collateral under the UCC); *Walker v. United States of America,* 636 F.Supp. 61, 63 (N.D.Okla.1986)(Bank tortiously converted receivables only to the extent that the United States held a prior lien. No conversion, however, as to the receivables on which the Bank held the first and prior lien); *Sachs v. Curry–Thomas Hardware, Inc.,* 464 So.2d 597, 601 n. 5 (Fla. 1st DCA 1985)(Senior lienholder did not convert property by refusing to allow junior lienholder to repossess).

The Court finds, therefore, that the USA's conversion judgment should include the sum of $1,222.50 on account of the October 10, 2000 Tax Lien.

### Conclusion

The total amount of the USA's judgment arising from Heller's conversion of the accounts receivable of Silver Moves is $8,600.52. This amount consists of the sum of $58,220.02 arising from the February 4, 2000 Tax Lien, plus the sum of $1,122.50 arising from the October 10, 2000 Tax Lien, for a subtotal of $59,442.52, minus the sum of $50,842.00 received by the USA in a prior distribution.

The portion of the judgment based on the October 10 Tax Lien relates only to Heller's conversion of the receivables generated between October 26 and November 1, 2000, because the USA's Tax Lien had priority status during that period. The judgment does not include the balance owed on account of the October 10, 2000 Tax Lien, however, because Heller held the first priority security interest on the receivables generated between October 10 and October 25, 2000.

Accordingly:

**IT IS ORDERED** that:

1. Heller Healthcare Finance, Inc.'s Motion for Entry of an Order Determining (i) IRS' Interest in Funds Allocated to Debtor Silver Moves, (ii) Amount of Tortious Conversion Judgment Entered in IRS Adversary Proceeding, and (iii) Directing Final Distribution of Allocated Plan Funds is granted as set forth in this Order.

2. The judgment in favor of the United States of America arising from Heller Healthcare Finance, Inc.'s tortious conversion of Silver Move's accounts receivable is $8,600.52.